MEARS et al. v. LOCKHART et al.

(Circuit Court of Appeals, Eighth Circuit. April 14, 1902.)

No. 1,652.

VENDOR AND PURCHASER—TITLE OF BONA FIDE PURCHASER—UNRECORDED
CONTRACT.

A bona fide purchaser of land for full value from the holder of the
legal title cannot be affected by an agreement made by his grantor to
hold the land in trust for another of which he had no actual notice,
and which was not recorded until after his purchase.

Appeal from the Circuit Court of the United States for the District
of North Dakota.

E. Ashley Mears, for appellants.

John E. Greene (Ira B. Mills, W. C. Resser, and E. B. Mills, on the
brief), for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge. This was a bill filed by J. B. Lock-
hart (upon whose death Frances E. Lockhart and Angline Kearney
Lockhart, an infant, were substituted as appellees) against E. Ashley
Mears and Clarence T. Mears, the appellants, to determine the adverse
claims of the appellants and quiet the appellees' title to certain real
estate situated in North Dakota. The proceeding was authorized by
the Code of that state. The defendants answered, and filed a cross
bill. A good deal of testimony was taken. The court below found
against the appellants on several grounds, and entered a decree in con-
formity to the prayer of the bill.

The property in question had once belonged to the National Bank
of North Dakota at Fargo. The bank failed, and thereafter proceed-
ings were had which resulted in investing John A. Percival with the
legal title to the real estate in controversy and certain personal assets
of the bank. To perfect Percival's title to the real estate the appel-
lant E. Ashley Mears, as president of the bank, executed and deliv-
ered to Percival on the 17th day of August, 1896, deeds of convey-
ance for the same, and on the same day Mears and Percival entered
into a contract, the material parts of which are as follows:

"This contract entered into the seventeenth day of August, 1896, by and
between E. Ashley Mears, president of the National Bank of North Dakota,
at Fargo, North Dakota, on behalf of himself and other officers of said
bank, and John A. Percival, witnesseth that whereas, the officers of the
National Bank of North Dakota are anxious to have it reorganized for the
benefit of its stockholders, and the stockholders' agent heretofore appointed
has transferred its assets to John A. Percival under an order of the judge
of the United States court for the district of North Dakota; and whereas,
it being necessary to perfect its title that the officers of said bank should
execute in its behalf to said Percival a deed for all the real estate so trans-
ferred; and whereas, the said Percival is willing to turn over to any new
corporation formed in the interests of any or all of the stockholders of
said national bank all the real and personal property which he purchased
from said stockholders' agent, J. A. Hanway: Now, therefore, the officers
of said bank have this day executed deeds to the following described real
estate to John A. Percival, to wit: * * * It is here further agreed that
on payment to said Percival by the officers of said bank of the sum of

115 F.—55

twenty-six thousand dollars at or prior to the time he makes payment to said Hanway or other person for purchase price he shall convey said property in fee simple, free of all liens or incumbrances except those existing at this time to said officers, or, should any mortgage be placed thereon, such amount shall be deducted from the said sum of twenty-six thousand dollars. It is hereby further agreed that said payment may be made in installments, and that said officers shall be at liberty to take, and said Percival shall convey, any portion of the aforesaid property on payment to said Percival of the amount of this contract. It is agreed that Percival is to take the bank stock at $4,600 to apply on this contract."

This contract is the basis of the appellants' claim to the property. (The circuit court found that this "agreement was wholly terminated 'and annulled by the mutual agreement of the parties." Though there is evidence in the record to support this conclusion, we do not rest our judgment on that ground.

The lower court also found that Lockhart was a bona fide purchaser in good faith for a valuable and sufficient consideration, without notice, either constructive, express, or implied, of any claim, either legal or equitable, of the appellants or either of them, or any other person, to the premises in controversy. In this finding we fully agree. According to the great weight of the evidence, Lockhart was a bona fide purchaser in the fullest and strictest sense. He agreed to pay and did pay $19,000 for the property. This was its full value. The contract between Mears and Percival which we have quoted was not acknowledged or recorded, and he had no notice of its existence, and no notice of any fact to put him on inquiry. Fourteen days after Lockhart made his purchase and had paid, or become irrevocably bound to pay, the purchase money, and the deeds from Percival to him had been duly acknowledged, the contract between Mears and Percival with an imperfect acknowledgment was recorded. This action did not and could not affect the rights of Lockhart previously acquired.

No useful purpose would be subserved by reciting in detail the evidence to support the finding of the lower court and of this court on this question of fact. The science of jurisprudence is not advanced by the discussion of mere questions of fact. It is enough to say that the evidence upon this issue is to our minds conclusive. Conceding, therefore, that the agreement between Mears and Percival established a trust relation between them, Lockhart was not affected thereby, because he had no notice, either constructive or actual, of the existence of any such trust relation.

The decree of the circuit court is affirmed.